JjBILLY HOWARD EZELL, Judge.
Both the employer and employee have appealed the judgment of the Office of Workers’ Compensation. The issues are whether Marty Flagg is entitled to continuing medical and compensation benefits, should the judgment have included the amount and period of compensation benefits, whether Hixson Funeral Home mailed *176 Flagg a letter offering him a job, and penalties and attorney’s fees.
FACTS
The facts surrounding Flagg’s accident and resulting disability are not in dispute. On March 4, 1996, Marty Flagg went to work for Hixson Funeral Home in Lake Charles. On May 8, 1996, Flagg was lifting and putting caskets away when he twisted his back, resulting in a herniated disk. Surgery was performed on Flagg’s back. In addition to medical benefits, Flagg received compensation benefits at the rate of $330 a week from Hixson, which was self-insured.
On July 18, 1997, Flagg’s compensation benefits were terminated because he was released to return to work at light or moderate activities by Dr. William Foster. Hixson purportedly sent a letter to Flagg at his new residence in Memphis, Tennessee, offering him a job at a modified position, but he never showed up.
On October 8, 1998, Flagg injured his back when he stepped up on a curb while working for Interface Security Systems in Missouri. After learning of the new injury, Hixson terminated Flagg’s medical benefits on November 11, 1998. Hixson did pay for Flagg’s prescriptions through December 4,1998.
On January 14, 2000, Flagg filed a disputed claim for compensation. A hearing was held on October 10, 2001. The workers’ compensation judge (WCJ) found that Flagg was capable of performing light-duty work. However, the WCJ held that Hixson faded to prove that Flagg actually received the letter offering employment, | ¡^therefore, Hixson owed supplemental earnings benefits. The WCJ further found that Hixson was not relieved from any further obligation to pay compensation benefits due to the October 8, 1998 accident and that Hixson failed to properly investigate the matter. Therefore, the WCJ awarded penalties in the amount of $2,000 and attorney’s fees in the amount of $3,000. Both parties appeal the judgment.
BENEFITS
Hixson claims the WCJ erred in finding that Flagg’s current condition is related to his accident with Hixson in 1996 and not related to the October 8, 1998 accident. Hixson argues that not only is there an absence of any serious medical evidence relating Flagg’s disability to the 1996 accident, but there are also numerous circumstances which discredit or cast serious doubt on Flagg’s testimony and credibility. One discrediting fact alleged by Hixson is the fact that Flagg made a claim for workers’ compensation benefits in Missouri for the 1998 accident but failed to mention the 1996 accident so he could collect benefits in Missouri, yet now seeks benefits in Louisiana for the 1996 accident. Hixson also directs this court’s attention to the fact that Flagg failed to notify the adjuster that he was working while collecting benefits.
We are mindful that factual findings of a WCJ are subject to the manifest error standard of review. Johnson v. Tránseme, 01-1170 (La.App. 3 Cir. 2/27/02), 809 So.2d 1179. The issue to be resolved by this court is not whether the trial court was right or wrong but rather its conclusions were reasonable. Id. Furthermore, deference is due to the trial court’s credibility determinations. Id.
In finding that Flagg was still disabled as a result of the 1996 accident, the WCJ relied on a report from Dr. Jaime Henderson, a neurosurgeon in St. Louis who treated Flagg following the 1998 accident. In an October 19, 1998, report Dr. | oHenderson stated that, “Mr. Flagg is suffering from neuropathic pain secondary to *177 scar tissue at the prior sites of lumbar surgery. Therefore, I cannot link his current difficulty with the event he experienced at work on October 8th.” Hixson introduced a letter into evidence written by Dr. Henderson on November 25, 1998, to the Missouri workers’ compensation insurer in which he stated that, “I believe that the more recent trauma, coupled with the prior surgery probably contributed to his present symptoms.” However, this letter still indicates that previous problems were continuing to cause Flagg problems.
Additionally, other evidence indicates that just three days prior to the Missouri accident, Flagg went to see Dr. Kevin Gorin who had been treating Flagg for pain management after the 1996 accident. Dr. Gorin observed that Flagg was continuing to complain of lower back pain with radiation of symptoms into the right, lower extremity. Dr. Gorin noted that at that time, Flagg continued with a permanent partial disability but was able to be released to light-to-medium-duty employment.
While we agree that it appears that Flagg was not forthcoming about his current employment and that he failed to report the 1996 incident in Missouri, we find that the WCJ was within her discretion in finding that his current problems are related to the 1996 incident.
OFFER OF EMPLOYMENT
Hixson argues that the WCJ erred in finding that it failed to prove that it offered employment to Flagg within his restrictions, which would relieve it of its obligations for supplemental earnings benefits. La.R.S. 23:1221(3); Daigle v. Sher-win-Williams Co., 545 So.2d 1005 (La. 1989).
Hixson introduced a letter dated May 5, 1997, addressed to Flagg in Memphis, Tennessee, offering him a job in a modified-duty position. Flagg testified that he | ¿never received the letter. The WCJ found that Hixson was unable to prove that Flagg actually received the letter because it was not sent by certified mail and it was unknown who sent it or even when the letter was actually mailed.
Hixson argues that there is no requirement that an offer of employment be sent by certified mail for it to be valid. While we agree, we also find that it was Hixson’s responsibility to prove that an offer of employment was made to Flagg. Daigle, 545 So.2d 1005; Johnson, 809 So.2d 1179.
Obviously, the WCJ found Flagg’s testimony credible. It is apparent that the WCJ recognized that there was no requirement that the letter be sent by certified mail but was suggesting certification would provide proof that Flagg had received the letter offering employment. There is no proof in the record that the letter was actually mailed or received by Flagg. We cannot say that the WCJ’s finding in this regard was in error since she obviously believed Flagg’s testimony that he did not receive the letter. Therefore, we find no error in the WCJ’s finding that Hixson failed to prove that a job was offered to Flagg.
PENALTIES AND ATTORNEY’S FEES
The WCJ found that Hixson failed to reasonably controvert or investigate the medical issue prior to termination of Flagg’s benefits following the October 8, 1998 incident and awarded penalties and attorney’s fees. Hixson argues that the award of penalties and attorney’s fees was improper because its actions were justified when it learned that Flagg was receiving benefits from other sources after the 1998 incident. Flagg also appealed and argued that the WCJ should have found that ter *178 mination of weekly benefits were also improper and awarded attorney’s fee for the work done on this issue. In addition to claiming that attorney’s fees and penalties were properly awarded, Flagg also claims he is entitled to an increase in attorney’s fees for the work |Bperformed on appeal.
Louisiana Revised Statute 23:1201 provides for penalties and attorney’s fees when “payment of compensation benefits is not commenced timely, if continued benefits are not paid timely, or if medical benefits are not paid timely, unless ‘the claim is reasonably controverted’ (or the nonpayment results from conditions over which the employer and insurer have no control).” Williams v. Rush Masonry, Inc., 98-2271, p. 7 (La.6/29/99), 737 So.2d 41, 45. Louisiana Revised Statutes 23:1201.2 “governs the discontinuance of payment of claims due and arising under the Act, with an award of attorney’s fees authorized when the discontinuance is arbitrary, capricious or without probable cause, as well as penalties only against the insurer in limited situations.” Id. (footnote omitted). Thus, Flagg would be entitled to only attorney’s fees for the discontinuance of benefits.
In City of Eunice v. Credeur, 99-302 (La.App. 3 Cir. 10/13/99), 746 So.2d 146, this court held that the City acted arbitrarily and capriciously in terminating claimant’s benefits and medical compensation and awarded both penalties and attorney fees. The supreme court denied writs on the issues presented but reversed this court’s award of penalties, finding that La. R.S. 23:1201.2 governed the case because benefits were discontinued, which only allows for an award of attorney fees. City of Eunice v. Credeur, 99-3249 (La.1/28/00), 753 So.2d 226. Obviously, La.R.S. 23:1201.2 applies to the discontinuance of both compensation and medical benefits. Also see Ins. Co. of N. Am. v. Labit, 99-2448, 99-2449 (La.App. 1 Cir. 11/15/00), 772 So.2d 385.
Therefore, we agree with Hix-son that it was improper to award penalties in this case because both Flagg’s compensation and medical benefits were discontinued. The law provides that only attorney’s fees are a proper award when benefits are | (¡discontinued. Both Flagg’s compensation and medical benefits were discontinued. Therefore, the issue is whether Hixson acted arbitrarily, capriciously, and without probable cause in discontinuing the payment of compensation and medical benefits so as to warrant the imposition of attorney’s fees under La. R.S. 23:1201.2.
“Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.”
Awards of penalties and attorney’s fees in workers’ compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed.
The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim.... The employer must adequately investigate the clam, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action.
Williams, 737 So.2d at 45-46 (citations omitted).
We are also mindful that the determination of whether an employer should be cast *179 with penalties and attorney’s fees is essentially a question of fact which will not be reversed absent evidence of manifest error. Ardoin v. Kipling Komer Grocery, 01-1596 (La.App. 3 Cir. 4/17/02), 824 So.2d 371.
Gloria Husser was the adjuster who started working on Flagg’s file in May 1997. She testified that she terminated benefits on July 18,1997, based on Flagg’s release to return to work and the offer of employment by Hixson. Husser never personally notified Flagg of the offer of employment. However, medical benefits continued to be paid. It was after the 1998 incident that Husser determined that medical benefits were no longer owed because she received information that Flagg was claiming that he had a new compensa-ble injury. Husser admitted that she never | investigated the details about the 1998 incident.
Regarding termination of Hixson’s compensation benefits, we initially observe that there was no testimony or evidence that Hixson followed up with Flagg to ensure that he received the offer of employment. Hixson relied on the offer of employment letter requiring Flagg to appear at Hixson Funeral Home in Lake Charles by May 19, 1997, at 8 a.m., or he was rejecting the offer. We find that this was insufficient as a legitimate tender of employment. Before benefits were terminated, Hixson should have ensured that Flagg received and was rejecting the offer of employment.
Furthermore, as observed by Flagg, Dr. Gorin did not approve the job until July 11, 1997, after the offer was considered rejected by Hixson. We do note that benefits were not terminated until July 18, 1997, when Hixson had knowledge that Dr. Gorin approved the job that had been offered.
While this may be a close case, we cannot say that the WCJ’s failure to find that Hixson was arbitrary and capricious in terminating compensation benefits was in error. Flagg’s compensation benefits were only terminated after he was released to return to work by his doctor with the doctor approving the job that Hixson attempted to offer to Flagg.
However, the discontinuance of Flagg’s medical benefits is a different matter. Flagg was continuing to receive medical treatment for this accident at Hixson just three days before the 1998 incident. The adjuster heard about the incident and admitted that she never bothered to investigate the matter. She just made the decision to terminate medical benefits because there was a new injury. The adjuster never made a determination that Flagg had recovered from his previous injury.
The record is clear that the adjuster failed to properly investigate the 1998 incident and its relation to the 1996 injury. The WCJ was correct in awarding | ^attorney’s fees for Hixson’s discontinuance of medical benefits.
Flagg contests the amount of attorney’s fees awarded. “The factors usually taken into account when fixing the amount of attorney fees to be awarded in workers’ compensation cases are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case.” Langley v. Petro Star Corp. of La., 01-198, p. 11 (La.6/29/01), 792 So.2d 721, 727. We do not find that an award of $3,000 for the prosecution of the medical benefits aspect of this case was abusively low.
Flagg did file an appeal seeking attorney’s fees for the work done on appeal. We find that he is entitled to addi *180 tional attorney’s fees since we uphold the finding that medical benefits were improperly discontinued. We award $1,000 in attorney’s fees for the work performed on appeal.
JUDGMENT
Flagg claims that the WCJ erred in failing to state that Flagg’s weekly compensation rate was $330 per week in the judgment. He also claims that the WCJ erred in failing to indicate in the judgment a period for which weekly compensation benefits were due.
At trial the parties stipulated that Flagg was paid benefits in the amount of $330 a week prior to the discontinuance of benefits. Therefore, we will amend the judgment accordingly.
In oral reasons for the judgment the trial court stated that, “WHILE THE DEFENDANT IS NOT RELIEVED OF ITS RESPONSIBILITY TO PAY, A CREDIT MAY BE DUE FOR WORKERS’ COMPENSATION BENEFITS PAID TO THE CLAIMANT IN MISSOURI.”
Louisiana Revised Statutes 23:1225(C)(d) provides that a worker’s | ncompensation benefits shall be reduced when he receives any other workers’ compensation benefits. The employer must prove entitlement to this credit for benefits by a preponderance of the evidence. LeStage v. Town of Chatham, 26,676 (La. App. 2 Cir. 3/1/95), 651 So.2d 329.
It does not appear that Hixson made a request for any credits and has not appealed the issue. Therefore, we agree with Flagg that the judgment should be amended, purposes of clarity, to provide that Flagg’s supplemental earnings benefits should be reinstated effective July 18, 1997, the date that benefits were terminated, until further notice.
For the foregoing reasons, we reverse that part of the judgment which awarded penalties in the amount of $2,000. We amend the judgment to include an additional award of $2,000 in attorney’s fees for the work performed on the appeal. We also amend the judgment to provide that Flagg is entitled to supplemental earnings benefits in the amount of $330 per week from July 18, 1997, until he is no longer eligible. We affirm the judgment in all other respects. All costs of this appeal are assessed to Hixson Funeral Home.
REVERSED IN PART AND AFFIRMED AS AMENDED.