# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 08-815

TROY BROUSSARD

VERSUS

TOTAL TOWER SERVICES, INC.

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 04-01222
SHARON MORROW, WORKERS' COMPENSATION JUDGE
**********

CHRIS J. ROY[1]
JUDGE

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Judges.

**REVERSED AND REMANDED.**

Michael Benny Miller
Miller & Miller
P. O. Box 1630
Crowley, LA 70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellant:
    Troy Broussard

---

[1]Judge Chris J. Roy, Sr. appointed judge pro tempore of the Court of Appeal, Third Circuit.

**Christopher S. Mann**
**Jones, Walker, et al.**
**201 St. Charles Avenue**
**New Orleans, LA 70170-5100**
**(504) 582-8000**
**Counsel for Defendant/Appellee:**
     **Total Tower Services, Inc.**

**ROY, Judge (pro tempore).**

Appellant, Troy Broussard, appeals the trial court's ruling finding him not entitled to attorney fees and penalties as a result of the termination of his supplemental earnings benefits. For the reasons set forth below, we reverse.

### FACTS

Broussard injured his right ankle on March 14, 2003, during his employment with SBA Network Services, Inc., successor by merger to Total Tower Services, Inc. He was released to light duty work a few months after the accident. The parties agree that Broussard has been able to perform light duty work since around May 2003, and that he has not attempted to do so, except as described below.

Broussard began working for Total Tower on February 1, 1999. After the merger, SBA required Broussard, like every other employee, to sign certain company documents. Broussard signed at least some of those documents on June 25, 2001.

After the March 14, 2003 accident, Broussard received medical treatment and physical therapy for his right ankle. On December 30, 2003, he returned to light duty work for SBA, but was laid off on February 3, 2004.

On May 12, 2005, the parties stipulated to a judgment whereby SBA would pay Broussard weekly compensation benefits of $416.00, along with penalties in the amount of $8,650.00 and attorney fees in the amount of $6,500.00.[2] At a hearing on November 4, 2005, SBA was ordered to pay an additional $89.30 in interest on the weekly compensation award.

Broussard was again offered light duty work on September 26, 2005. SBA

---

[2]Although neither the judgment nor a motion for penalties and fees is contained in the record, the parties agree that the purported May 12, 2005 judgment was rendered, and they agree on its contents.

offered him a job as a warehouse assistant at the rate of $14.50 per hour; the job was to begin on October 10, 2005. In order to begin his employment, Broussard was required, among other things, to sign a Letter of Understanding, Employee Confidentiality, Non-Competition and Inventions Agreement, and an Employee Acknowledgment & Arbitration Agreement.[3] Broussard objected to certain provisions of these documents, and refused to sign them on advice of his attorney. SBA refused to allow Broussard to work unless the documents were signed. Broussard did not begin work, and SBA began paying supplemental earnings benefits (SEB) at that point on a monthly basis.

SBA offered Broussard the same job as warehouse assistant in a letter dated March 9, 2006. The offer was identical to the earlier one, except the wage almost doubled to $28.29 per hour. The job was approved by Broussard's physician and was within the physical restrictions assigned by him. Broussard was to begin work on March 20, 2006.

The letter stated principal terms and conditions that required Broussard to sign the same documents listed in the earlier offer. Again, Broussard refused to sign the documents, believing they infringed on his legal rights. SBA would not allow Broussard to work unless the documents were signed, and it refused to modify the standard documents required of all employees, while Broussard refused to begin work unless the documents were changed.

The terms Broussard found objectionable included a choice of law provision wherein Broussard waived his rights to have any dispute with SBA decided under Louisiana law. Rather, Broussard would have to consent to the application of

---

[3]Because Broussard was no longer listed as an SBA employee, he was required to sign the documents again, even though he had previously signed at least some of them on June 25, 2001.

Florida law, and also consent to arbitration of the dispute instead of recourse through the courts. Other documents asked Broussard to agree they contained negotiated terms and provisions when in fact, they were form documents prepared totally by SBA without regard to any individual circumstances. In complete contrast to Louisiana law, Broussard had to agree, before he could begin work under this offer of employment, that the terms and conditions of the agreements would not be construed against SBA as the drafter of the agreements. Further, Broussard was required to agree the terms of the Employee Confidentiality, Non-Competition and Inventions Agreement were reasonable and necessary, and was required to waive his right to contest that information deemed confidential by SBA constituted trade secret or confidential information under Florida law. These and numerous other conditions set out in the documents work to Broussard's detriment in light of Louisiana law, and constitute conditions placed on his employment that could potentially impact or remove certain rights granted by Louisiana law.

Because of this stalemate, SBA considered Broussard to have rejected a job for which he was suited and approved to perform, and it terminated his SEB effective April 30, 2006. Broussard filed a motion to assess penalties and attorney fees based on the termination of SEB. The workers' compensation judge (WCJ) denied the motion, and Broussard now appeals that ruling.

## DISCUSSION

SBA argues Broussard is not entitled to further indemnity benefits because he has been released to light duty work, he refused the light duty job offered on March 9, 2006, and he is capable of earning more than 90% of his pre-injury wage. Broussard argues SBA's requirement that he sign the documents constitutes an

3

improper condition of employment. He assigns as error the WCJ's failure to award penalties and attorney fees based on SBA's termination of weekly compensation benefits.

The issue is whether SBA was arbitrary, capricious, or without probable cause when it terminated Broussard's SEB. If so, Broussard is entitled to penalties and attorney fees. *Faul v. Bonin*, 95-1236 (La.App. 3 Cir. 8/7/96), 678 So.2d 627, *writ denied,* 96-2221 (La. 11/15/96), 682 So.2d 769. "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Flagg v. Hixson Funeral Home*, 02-878 p.6 (La.App. 3 Cir. 2/5/03), 838 So.2d 174, 178 (citations omitted). Whether SBA's termination of benefits was arbitrary, capricious, or without probable cause is a factual question subject to the manifest error standard of review. *Vidrine v. La-Tex Rubber & Specialties, Inc.*, 07-157 (La.App. 3 Cir. 5/30/07), 958 So.2d 146, *See also Reed v. Abshire*, 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224.

SBA contends it could have terminated Broussard's benefits as of March 21, 2006, when Broussard failed to begin work, but, without explanation, voluntarily paid him through April 30, 2006.[4] Relying on *Grillette v. Alliance Compressors*, 05-982 (La.App. 3 Cir. 2/1/06), 923 So.2d 774, SBA argues Broussard's refusal of the March 9, 2006 job offer justifies the termination of his SEB.

*Grillette* can be distinguished from this case, however. There, the employer showed the availability of a job that qualified the claimant for SEB, but the claimant was terminated from that job for cause. The claimant, therefore, failed to

---

[4]SBA likewise has offered no explanation as to why it continued Broussard's benefits after he refused its September 2005 job offer, although it also apparently offered a wage equal to or greater than 90% of his pre-injury wages at that time.

prove that her injury rendered her unable to earn at least 90% of her pre-injury wage. The court apparently considered her termination for cause tantamount to a refusal of the offer of the job.

Here, SBA seeks to prove Broussard can earn 90% or more of his pre-injury wage by offering him a position that in fact pays far more than that wage. But, by requiring Broussard to execute the documents, SBA places Broussard in the position of choosing between employment that meets his restrictions but forfeits certain rights granted by law and no employment at all. SBA cannot avoid payment of SEB under these circumstances.

We find this case is more similar to *Lacaze v. Alliance Compressors*, 03-1566 (La.App. 3 Cir. 4/14/04), 870 So.2d 1150. In *Lacaze*, the injured claimant returned to work and was immediately placed on suspension after only attending a meeting. When the suspension ended, she returned to work and was terminated about a month later for violating attendance policy after she was seven minutes late because she stopped to pick up medicine on her way. The employer then terminated the claimant's SEB on grounds of termination for cause.

The trial court awarded claimant penalties and attorney fees, finding the employer's obligation to pay SEB did not end during her period of suspension or at her termination of employment. On appeal, this court agreed, finding the claimant "did not refuse to accept employment but rather was not permitted to work due to the suspension imposed upon her return." *Id.* at 1156.

Here, Broussard was likewise not permitted to work due to his refusal to surrender certain legal rights granted him by Louisiana law, something he arguably could have done had he signed the required documents. He did not refuse to work;

5

he refused to sign the documents, and SBA would not permit him to work under those circumstances.

SBA knew or should have known Broussard would not sign the documents. SBA had offered Broussard the same job at almost half the hourly wage in September 2005. Broussard refused to sign the documents then, and SBA refused to let him return to work. When Broussard then did not receive his usual weekly indemnity benefit, SBA explained it had merely switched him to SEB, payable monthly. Yet, when SBA almost doubled the offered hourly wage in March 2006 and refused to allow Broussard to return to work without signing the documents, it terminated all benefits more than a month later, claiming Broussard rejected its accommodating job offer. The only difference between the two job offers was the hourly wage. In short, SBA made an offer to Broussard it knew he would not accept, apparently for the purpose of terminating his SEB.

The conditions SBA placed on Broussard in order for him to return to work required him to surrender legal rights and impose conditions beyond what Louisiana workers' compensation law requires. Accordingly, we find the WCJ was clearly wrong in denying Broussard's claim for penalties and attorney fees.

La.R.S. 23:1201(G) provides for the amount of the penalty to be awarded here:

> If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. . . . The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

6

We remand this matter to the WCJ for a calculation of the amount of penalties and a determination of attorney fees to be awarded. All costs of the appeal are assessed to SBA.

**REVERSED AND REMANDED.**