998 So.2d 149 (2008)
Rosemary Rosseljong LESTELLE, Widow of Frank Lestelle; and Frank Lestelle, Jr., Thomas Lestelle, Gregory Lestelle, Joseph Lestelle, Marie Lestelle, and Patricia Lestelle, Children of Frank Lestelle
v.
ASBESTOS CLAIMS MANAGEMENT CORPORATION (formerly known as National Gypsum Company), et al.
Rosemary Rosseljong Lestelle, et al.
v.
Asbestos Claims Management Corporation, et al.
John Murden, Sr. and Josephine Musso Murden
v.
ACandS, Inc., Asbestos Claims Management Corporation (formerly known as National Gypsum Company); Babcock & Wilcox Company; Branton Insulations, Inc., et al.
John Murden, Sr. and Josephine Musso Murden
v.
ACandS, Inc., Asbestos Claims Management Corporation (formerly known as National Gypsum Company); Babcock & Wilcox Company, et al.
Nos. 2007-CA-1010, 2007-CA-1553, 2007-CA-1163, 2007-CA-1478.
Court of Appeal of Louisiana, Fourth Circuit.
October 22, 2008.
*151 Derek A. Walker, Parker Harrison, Chaffe McCall L.L.P., New Orleans, LA, for AXA Belgium N.V.
Robert E. Peyton Elizabeth S. Cordes Christovich & Kearney, L.L.P. New Orleans, LA, Phil B. Abernethy, Butler Snow O'Mara Stevens & Cannada, PLLC, Jackson, MS, for International Paper Company.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge EDWIN A. LOMBARD).
DENNIS R. BAGNERIS, SR., Judge.
In this consolidated matter, third-party defendant, AXA Belgium N.V. (`AXA'), seeks review of partial final judgments of the trial court on the third-party demands in these two related cases, Rosemary Rosseljong Lestelle, et al. v. Asbestos Claims Management Coprporation, et al., Case No.XXXX-XXXX, Division "M", and John Murden, Sr. et al. v. ACandS, Inc., et al. Case No. 1999-12527, Divison "I". After reviewing the record and applicable law, we amend the judgments of the trial courts to include an additional award of $2,000.00 for work performed on appeal in favor of defendants/third-party plaintiffs, Champion International Corporation and International Paper Company (collectively, "International Paper"[1]) and, as amended, affirm the judgments of the trial courts in favor of International Paper and against AXA.

FACTS AND PROCEDURAL HISTORY
The Lestelle and Murden cases involve wrongful death claims asserted by the survivors of individuals who allegedly sustained injury from prolonged occupational exposure to asbestos-containing products. Both plaintiff groups settled with all original defendants in 2003.
International Paper filed a third-party petition for indemnity and/or contribution against Euro Panels Overseas N.V., the successor corporation to Eternit N.V., (collectively *152 "Eternit"), the company that manufactured several of the products allegedly sold by International Paper from 1958 to 1974, and against AXA, as the insurer of Eternit and International Paper[2]. Specifically, the products distributed included Glasweld, Flexweld, and Qasal. When International Paper's distribution of Eternit's products ceased, the termination agreement between International Paper and Eternit specifically required Eternit to purchase insurance for International Paper. The insurance policy (hereinafter "the AXA policy") obtained by Eternit pursuant to the termination agreement was issued by AXA's predecessor, Caisse Patronale S.A. and provided liability insurance[3].
In Section I. "Object and Scope of the Insurance," the policy provides as follows:
The object of the insurance is to cover the contractual or non-contractual statutory liability which may be incumbent upon the Subscriber [Eternit] as a result of bodily injuries and/or damage to property accidentally caused third parties by a supply delivered by the Subscriber to its sole distributors in the USA and Canada.
The insurance is payable in case of accidental damage resulting, in particular, from defects or faults in the supplies, as well as errors, faults or negligence in design, manufacture, packing, packaging, labeling, shipping, etc.
There are covered in particular actions brought against the Subscriber on the basis of Article 1645 of the Civil Code or of similar provision in law in force in the USA and Canada in case of accidental damage resulting from hidden defects or faults of which the Subscriber or its employees would be presumed to have had knowledge, only cases of willful misconduct or fraud established on the part of the Subscriber itself being excluded.
* * *
The insurance covers all losses which have occurred during the term of the contract, whatever the period of time which has passed since the delivery of the supplies.
Losses which have occurred after the expiration, cancellation or voiding of the policy for any reason whatsoever are not covered by the policy.
International Paper [Champion] was made an additional insured for the sale of Eternit's products under the Special Conditions section of the policy.
In July 2004, International Paper filed a motion for partial summary judgment in Murden on the basis that there was no question of law or fact that the AXA policy provided insurance coverage to International Paper for the claims asserted by plaintiffs against it. Thereafter, AXA filed a motion for partial summary judgment, arguing that the AXA policy did not provide coverage for the claims. In AXA's opposition to International Paper's motion for partial summary judgment and in support of its own motion for partial summary judgment, AXA argued that Belgium law applied to the issue of coverage and that coverage did not exist under Belgium law. AXA further argued that, under Belgium law, the damage alleged was not "accidental damage" covered by the policy, that the policy covered only claims made during the policy period, and that International Paper's *153 third party claims were barred by a policy provision requiring the insured to filed suit within six months of a denial of coverage. In October 2004, the trial court, applying Louisiana law, granted International Paper's motion and denied AXA's motion. Thereafter, on December 14, 2005, this Court affirmed the summary judgment in favor of International Paper. This Court found that Belgium law was applicable to the coverage issues presented and that, under Belgium law, coverage existed under the AXA policy. This Court further found no merit in AXA's argument that International Paper failed to comply with the policy's six-month action clause, which would have caused the claims to be time-barred. AXA filed a writ application to the Louisiana Supreme Court from this Court's decision affirming coverage, which was denied on April 17, 2006.
After the coverage issue had been established, International Paper filed a motion for summary judgment in both Lestelle and Murden. International Paper sought a judgment for all amounts paid in settlement of the claims asserted by plaintiffs; all costs and expenses including attorney's fees; and penalties under La. R.S. 22:658 and 22:1220.
At that time, AXA filed exceptions of prescription in both Lestelle and Murden. In support of its exception, AXA argued (1) that a policy provision required that any claim by International Paper against AXA had to be filed within three years of the original claim filed by Plaintiffs, and (2) that International Paper's claim is time barred because of the policy's six month action clause[4].

International Paper's motion for summary judgment with AXA's exception of prescription in Lestelle:
On February 16, 2007, the trial court heard International Paper's motion for summary judgment with AXA's exception of prescription. The trial court, relying on this Court's decision in Murden v. ACandS, Inc., granted summary judgment in part finding that coverage exists under the AXA policy for the claims asserted by the Lestelle plaintiffs against International Paper. Thereafter, by judgment signed on April 3, 2007, the trial court found that International Paper is entitled to the full amount paid by it in settlement and that International Paper is entitled to recover reasonable attorneys' fees and expenses. The judgment further instructed the parties to attempt to reach agreement as to the amount of reasonable attorneys' fees and expenses, but provided that the court would conduct a hearing on this issue if no agreement could be reached. This judgment was designated as a final judgment and is the basis of AXA's appeal.
Because the parties could not agree to attorneys' fees and expenses, a hearing was conducted on June 4, 2007, to assess the fees and expenses. At the conclusion of the hearing, the trial court ruled that International Paper was entitled to recover all fees and expenses incurred from the filing of plaintiffs' first amended petition in May 2001. This judgment is also the basis of AXA's appeal. Subsequent to the trial court's ruling on the attorneys fees and expenses, AXA conceded that the fees and expenses awarded were reasonable and necessary and filed a stipulation with the trial court that it reserved its right to *154 contest the trial court's determination that attorneys fees are available under Belgium law and, if found to be available, the date from which fees are owed.

International Paper's motion for summary judgment with AXA's exception of prescription in Murden:
On April 23, 2007, the trial court heard International Paper's motion for summary judgment with AXA's exception of prescription in Murden. After hearing the arguments, the trial court granted International Paper's motion for summary judgment with the exception of International Paper's claims for penalties. Thereafter, a judgment was signed on May 25, 2007, awarding International Paper the full amount of the settlement paid to plaintiffs plus all reasonable attorneys fees and expenses. The judgment instructed the parties to attempt to reach agreement on the amount of the fees and expenses. This judgment is the basis of this appeal.
On June 21, 2007, AXA entered a stipulation that the fees and expenses incurred by International Paper were reasonable and necessary and that AXA would not contest on appeal that the fees and expenses incurred were reasonable and necessary. However, as in Lestelle, AXA reserved its right to contest the availability of the fees under Belgium law and the date from which the fees are owed. Thereafter, on September 10, 2007, the trial court signed a consent judgment awarding International Paper the full amount of attorneys' fees and expenses incurred from the date on which the plaintiffs originally filed suit. This consent judgment is also the subject of this appeal. On September 21, 2007, International Paper answered to the appeal of AXA arguing that it is entitled to recover all attorneys fees, expenses and costs incurred in the appeal and all continuing litigation.
On appeal, AXA alleges the following assignments of error: (1) whether the trial courts erred as a matter of Louisiana law in disregarding the binding three-year prescription provision in the insurance policy, and instead, applied Louisiana's prescription rules to assess the timeliness of International Paper's third-party claims under the policy and in denying AXA's exceptions of prescription; (2) whether the trial courts erred as a matter of law in applying Louisiana's "reasonableness" standard, rather than the appropriate standard under Belgium law, to determine the burden of proof and measure of International Paper's recovery from AXA; (3) AXA underwrote only 65% of the risk, and the trial courts erred in finding AXA liable for 100% of the settlement amounts; (4) the trial courts erred as a matter of Belgium law in awarding attorneys' fees and expenses; and (5) the trial courts erred in holding AXA liable for fees and costs incurred before it was notified of the claims and afforded an opportunity to assume International Paper's defense.

DISCUSSION
Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 00-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670.

A. Prescription
The first issue to address is whether the trial courts erred as a matter of Louisiana law in applying Louisiana's prescription rules to assess the timeliness of International Paper's third-party claims under the policy and in denying AXA's exceptions of prescription. AXA contends that Belgium law, particularly Article 32 of the Insurance Law of June 11, 1874, which was replaced by Belgium's new insurance *155 law of June 25, 1992, precludes International Paper's claims against it for indemnity. Article 32 of the Insurance Law of June 11, 1874 provides that:
[a]ny claim resulting from an insurance policy has become statute-barred after three years, from the event on which the claim is barred.
Thus, AXA argues that International Paper failed to file suit under the policy within three years of being sued by the Murdens and by the Lestelles.
International Paper argues that La. C.C. art. 3549 sets "high standards for displacing Louisiana's law of prescription" and that AXA can not satisfy its burden to oust Louisiana's prescription law. Further, International Paper argues AXA can not cite any "compelling considerations of remedial justice" which would support applying Belgium law to make the action time barred. We agree.
La. C.C. art. 3549 is the specific codal article applicable to limitations issues, whether substantive or procedural. La. C.C. 3549 provides:
A. When the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies.
B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:
(1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.
(2) If the action is not barred under the law of this state, the action shall be maintained unless it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.
C. Notwithstanding the foregoing provisions, if the substantive law of another state would be applicable to the merits of an action brought in this state and the action is brought by or on behalf of any person who, at the time the cause of action arose, neither resided in nor was domiciled in this state, the action shall be barred if it is barred by a statute of limitation or repose or by a law of prescription or peremption of the other state, and that statute or law is, under the laws of the other state, deemed to be substantive, rather than procedural, or deemed to bar or extinguish the right that is sought to be enforced in the action and not merely the remedy.
Thus, "[b]efore dismissing an action that has been timely filed under Louisiana law, the court must be satisfied that the action has prescribed in the state of the lex causae, and that neither the substantive nor the procedural or remedial policies of the forum stated would be served by maintaining the action." See Revision Comments  1991 to La. Civil Code art. 3549 Comment (g).
Bearing all the foregoing in mind, we are convinced in the end that AXA has failed to demonstrate that, under all relevant circumstances, the policies of Louisiana would not be served by maintaining this action. As correctly stated by International paper, Louisiana's public policy favors a holding that it be allowed to pursue an insurance coverage claim in Louisiana *156 because: (1) International Paper's third party demand against AXA is brought in one capacity as a direct action under La. R.S. 22:655[5]; (2) suit was filed in Louisiana; (3) the plaintiffs were Louisiana residents; (4) the alleged exposure took place in Louisiana; (5) damage was sustained in Louisiana; (6) the underlying tort action is subject to Louisiana substantive law; (7) the plaintiffs' claims against AXA's insured were asserted pursuant to Louisiana law, including its tort law principles; (8) International Paper added AXA as a third party while the plaintiffs' claims were pending, as it was entitled to do so under the Code of Civil Procedure, because AXA was liable to it for all of the plaintiffs' principal demand; and (9) the AXA policy was extended to cover claims that might arise out of the distribution of Eternit's products throughout the United States. Accordingly, we hold that under Louisiana's choice of law rules, Louisiana's law of prescription governs and that the trial courts correctly overruled AXA's exceptions of prescription.

B. Burden of Proof Regarding Measure of Recovery
AXA argues that the trial court erred in applying Louisiana's "reasonableness" standard rather than the appropriate standard under Belgium law, to determine the burden of proof and measure of International Paper's recovery from AXA. AXA alleges that International Paper failed to present any evidence of what that standard might be, or any evidence to satisfy that standard.
International Paper argues that AXA changed its position in the middle of the Lestelle trial and attempted to argue that it failed to meet its burden under Belgium law. International Paper argues that just because Belgium law applies to the interpretation of the AXA policy does not mandate the application of Belgium law to every issue in the case. We agree.
La. C.C. art 3515 states as follows:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
The trial court addressed this issue in Lestelle when AXA moved for an involuntary dismissal, arguing that International Paper's evidence relates to whether or not the settlement was reasonable under Louisiana law and not Belgium law. The trial court denied the motion and stated as follows:
The motion is denied. The case was going to be tried to a Louisiana jury or a Louisiana court with the law as it would be considered at that time. The motion is denied.
I understand that interpretation of the policy may be covered under Belgium law and some substantive law issues *157 with respect to coverage and other such things governed under Belgium law, but the question of whether or not Mr. Lestelle and his survivors were going to have a verdict rendered in their favor was going to be presented to a Louisiana jury in a Louisiana case. The motion is denied.
Applying La. C.C. art. 3515, we find the trial courts correctly applied Louisiana's reasonableness standard when determining the damages which are owed to International Paper for AXA's breach of its insurance obligation when the damages are in settlement of a tort claim asserted pursuant to Louisiana law by Louisiana plaintiffs.

C. AXA and the Settlement Amount
This Court, in Genghis Kahn, Inc. v. Formosa Hotel, Inc., stated the standard of review in a case involving contract interpretation, as follows:
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Orleans Parish School Board v. City of New Orleans, 96-2664 (La.App. 4 Cir. 9/3/97), 700 So.2d 870. "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571, 573. In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Syrie v. Schilhab, 96-1027, (La.5/20/97), 693 So.2d 1173. In such cases, appellate review of questions of law is simply to determine whether the trial court was legally correct. Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc., 01-1059, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 697-698, quoting Bartlett Construction Co., Inc. v. St. Bernard Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94.
03-1218, p. 4 (La.App. 4 Cir.6/02/04), 876 So.2d 923, 925, quoting Simpson v. Pep Boys-Manny Moe & Jack, Inc., 03-0358, pp. 3-4 (La.App. 4 Cir. 4/10/03), 847 So.2d 617, 621.
AXA argues that it wrote only 65% of the risk, and the trial court erred in finding AXA liable for 100% of the settlement amount. Although AXA alleges that it is expressly empowered, as lead insurer, to direct settlements, it argues that it can not be liable for more than 65% of the risk. International Paper argues that the co-insurance provision relied upon by AXA is ambiguous and that the trial courts correctly awarded International Paper the full amount of the settlements paid by it to the original asbestos plaintiffs.
The 1972 Caisse Patronale policy states as follows:

COINSURANCE
The risk covered by the present policy and the premiums relating thereto are divided among the companies designated below in the percentage indicated alongside of each of them, the first of them serving as leading insurer:

CAISSE PATRONALE 65%
LA CONCORDE 35%

The present policy does not create any joint and several liability between the insurance companies, each of them being deemed to contract individually with respect to its participation, as though it had issued a separate policy, except insofar as stated below:
1) in order to have uniformity in the contracts, the parties agree to refer to the general and special conditions of the present policy, an *158 original copy of which is held by the leading insurance company.
2) the settlement of losses will be effected by the leading insurance company acting in the name and for the joint account of the undersigned coinsurer companies. The latter shall have the right to have an agent of their selection present at the settlement, but they declare that they will comply with the decision of the leading insurance company both with regard to the application of the contract and the interpretation of its provisions and with regard to the determination of the amount of the indemnities.
All declarations and papers of any nature whatsoever relative to losses must be sent to the leading insurance company through the negotiating broker of the present contract.
The coinsurance companies acknowledge that they have each received a copy of the present policy for their files.
The trial court, in the Lestelle case, specifically found the 65% / 35% co-insurance provision in the AXA policy to be ambiguous and therefore, construed it against AXA. Specifically, the trial judge stated:
With respect to the issue of the 65 percent / 35 percent split in the policy which references  which one finds under the co-insurance language, the Court finds that that language is ambiguous and therefore construes it against AXA and it is ambiguous for the following reasons:
It pretty clearly assigned 65 percent of the losses for an accident covered under this policy to Caisse Patronale and 35 percent to LaConcorde. It goes on to say that the liability between these two companies is not joint and several and each of them is deemed to contract individually with respect to its participation. That seems to say that the plaintiff would have to sue Caisse Patronale separately from LaConcorde and for purposes of this discussion Caisse Patronale is AXA, correct?
MR. ABERNETHY:
Yes, ma'am.
THE COURT:
LaConcorde is not a party to these proceedings, has never been a party to these proceedings, is not before the Court.
The first paragraph of the policy after the designation of the 65 percent / 35 percent co-insurance language states clearly that the liability is not joint and several. That would seem to indicate that an insured must make a claim against both companies before they can seek coverage. That language seems to be in favor of AXA's position that they only owe 65 percent.
However, the remaining paragraphs indicate that AXA or Caisse Patronale is the lead insurance company acting in the name of and for the joint account of the undersigned co-insurer companies and that LaConcorde would have a right to have somebody present but that all decisions are to be made by the leading insurance company which is Caisse Patronale or AXA and all declarations and papers of any nature whatsoever relative to the lawsuit must be sent to the insurance company for or the official initiating brother of the present contract. In this case the evidence establishes that when a claim was made by Champion [International Paper] against AXA, AXA denied coverage. By virtue of this policy AXA had the right to deny coverage, and I say the right, they were the ones responsible for making the decision about whether they were accepting responsibility for coverage or denying coverage and even had LaConcorde thought *159 otherwise they did not have the freedom under this contract to say so. That indicates to this Court that Caisse Patronale took the lead and if Caisse Patronale or AXA wants to now go sue LaConcorde for its respective share it can go do that if they find that that's what the policy covers, but vis-a-vis the insured, it appears to this Court like AXA was the party to go to, AXA is the one that has to be sued, so the Court grants judgment in favor of the plaintiffs against AXA for the full amount of the five hundred fifty thousand dollars plus attorney's fees and the costs of litigating that case.
We agree with the trial court's reasoning for holding AXA responsible for 100% of the settlement amount. By virtue of this policy, AXA was the one responsible for making the decision of whether to accept responsibility for coverage or deny coverage. All decisions were to be made by AXA, and all declarations and papers of any nature whatsoever relative to the lawsuit had to be sent to AXA. We find that the contract at issue gave AXA the lead and that AXA may have a claim against LaConcorde for its respective share. Accordingly, we find the trial court correctly found AXA responsible for 100% of the settlement amount.

D. Attorneys' Fees and Expenses
AXA argues that the trial court erred as a matter of Belgium law in awarding attorneys' fees and expenses. AXA argues that it had no duty to assume International Paper's defense in these cases because of the coverage dispute. AXA alleges that its refusal to intervene in any of the asbestos suits was based upon its good-faith interpretation of the scope of the policy.
International Paper argues that under Belgium law, when a claim is made against an insured which is covered by a liability insurance policy, the insurer has the obligation to assume what is commonly called "the direction of the case" and that the insurer must appoint counsel to defend the insured and must support the costs of defense. International Paper argues that as a result of AXA's denial of coverage, it became entitled to recover from AXA its attorneys fees and costs incurred in defense of the claims asserted by the asbestos plaintiffs against it. We agree.
In ruling on attorneys' fees, the trial court relied on affidavits from Attorney Stefaan Cnudde, a Belgium attorney who worked in the field of liability insurance at Royale Belge (now AXA) and now specializes in international private and public law, with a particular emphasis on commercial law and disputes resolution. Mr. Cnudde's affidavit of November 30, 2006, states, in pertinent part:
5.
Under Belgiun insurance law, when a claim is made against an insured which is covered by a liability insurance policy, the insurer has the obligation to assume what is commonly called "the direction of the case" ("la direction du litige"). This means, i.a., that the insurer must appoint counsel to defend the insured and must support these costs of defence [sic]. (Citations omitted)
Taking up the defence [sic] of the insured is not only an obligation for the insurer but also a right since the insurer is primarily concerned in a successful defence [sic] of any claim against its insured.
6.
As the claims asserted in the Lawsuit by the plaintiffs against Champion International Corporation and U.S. Plywood Corporation [International Paper] were covered under the Axa Policy, Axa should have assumed the direction of the *160 case and should have appointed counsel to defend the insureds [sic] in the Lawsuit.
However, since Axa originally denied coverage for these claims asserted in the Lawsuit by the plaintiffs, Champion International Corporation and U.S. Plywood Corporation [International Paper] had to appoint their own attorneys-at-law and, consequently had to incur costs which normally should have been borne by Axa under Belgiun insurance law. Therefore, under Belgiun law, International Paper Company, as the proper party for Champion International Corporation and U.S. Plywood Corporation, is entitled to recover from Axa its attorneys fees and costs incurred in defence [sic] of the claims asserted by the plaintiffs against Champion International Corporation and U.S. Plywood Corporation in the Lawsuit.
7.
In addition, because Axa denied coverage for the claims asserted in the Lawsuit by the plaintiffs against Champion International Corporation and U.S. Plywood Corporation, Champion International Corporation and U.S. Plywood Corporation had to take legal action against Axa in order to enforce the insurance coverage.
* * *
As the insurer has an obligation to assume the direction of the case and to take up the defence [sic] of its insureds [sic], the Belgium doctrine and case law admit that any refusal or failure to do so engages the contractual liability of the insurer and may give rise to the awarding of damages to the insured. (citations omitted).
Damages to the insured is entitled to receive as compensation are, i.a., the costs for service of the writ of summons, the costs of external advice and the fees and costs of the attorneys-at-law hired by the insured.
After reading the affidavit of Mr. Cnudde, we find the trial court correctly held that under Belgium law, International Paper is entitled to attorneys' fees, costs and expenses it incurred defending the claims asserted against it by the plaintiffs. Further, we find that the trial court properly awarded the attorneys' fees, costs and expenses International Paper was forced to incur in the third party suit to enforce its contractual rights against AXA. Accordingly, we hereby affirm: (1) the award of attorneys' fees and expenses to International Paper from the date of the first amended petition in Lestelle, which was the first petition to specifically allege exposure to products manufactured by Eternit; and (2) the award of attorneys' fees and expenses from the date of the original petition in Murden, which specifically alleged exposure to products manufactured by Eternit.
In its answer to the appeal of AXA, International Paper asks for additional attorneys' fees, expenses and costs for work performed on appeal. Generally, an increase in attorney fees should be awarded when a party who was awarded attorney fees in the trial court is forced to and successfully defends an appeal. See Sam v. Jhane Home Health Care Services, Inc., 95-0081 (La.App. 4 Cir. 6/07/95), 657 So.2d 559. Given the fact that the appellant was unsuccessful in these consolidated appeals and that it necessitated additional work, we find that an additional award of $2,000.00 in fees is appropriate for this appeal.
For these reasons, we hereby amend the judgment of the trial court to include an additional award of $2,000.00 in favor of International Paper and, as amended, affirm *161 the judgments in favor of International Paper in these consolidated proceedings.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The company formerly known as United States Plywood Corporation was merged into a company which after various name changes became Champion International Corporation in 1972. Champion International Corporation was merged into International Paper Company in 2000.
[2] The issues in these four consolidated appeals pertain solely to International Paper's third-party claims against AXA.
[3] The policy was drafted in French, but a certified translation into English was filed into the record.
[4] AXA argued the same "six month action clause" that this Court had specifically found not to be applicable when AXA raised the clause as a coverage defense in connection with International Paper's earlier motion for summary judgment on coverage.
[5] La. R.S. 22:655(D) states that "it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy."