# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-656

**CUNARD LINE LIMITED CO.**

**VERSUS**

**DATREX, INC., ET AL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. 2002-140
HONORABLE PATRICIA C. COLE, JUDGE

**\*\*\*\*\*\*\*\*\*\***

## J. DAVID PAINTER
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

James E. Moore, Jr.
One American Place, Ste. 900
Baton Rouge, LA 70825
Counsel for Third Party Defendants-Appellants:
    Twin City Fire Insurance Company and The Hartford

Davis B. Allgood
Christopher D. Martin
8555 United Plaza Blvd., 5th Fl.
Bldg. IV
Baton Rouge, LA 70809
Counsel for Defendant-Third Party Plaintiff-Appellee:
    Datrex, Inc.

**PAINTER, Judge.**

Third-Party Defendants, Twin City Fire Insurance Company and The Hartford (the insurers), appeal the judgment of the trial court which found that they had a duty to defend their insured, Datrex, Inc. (Datrex), against a claim by Cunard Line Limited Co. (Cunard) and assessing defense costs, attorney's fees and penalties.

## FACTS

The underlying facts of the case are not in dispute.

Cunard bought a Low Level Lighting System from Datrex which was received and installed in 1997. In March 2002, Cunard sued Datrex alleging that the system did not perform up to Coast Guard standards. Datrex presented the insurers with the petition and a demand for coverage in April 2002. The insurers denied coverage. Datrex filed a third party demand against the insurers. In October 2003, the trial court entered a partial summary judgment finding that the insurers had a duty to defend Datrex against Cunard's suit. Cunard's claims against Datrex were dismissed in December 2004 on an exception of prescription. A motion for summary judgment filed by the insurers concerning the defense costs was heard and denied on the same date. In October 2006, the insurers issued a check to Datrex for $76,019.36, for defense costs.

In March 2009, the trial court issued a final judgment finding the insurers liable for the cost of defending the suit, penalties, and attorney's fees. The insurers appeal.

## DISCUSSION

*Duty to Defend*

The insurers assert several assignments of error with regard to the trial court's finding that they owed a duty to defend.

The law regarding an insurer's duty to defend is well settled.

The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *Meloy v. Conoco, Inc.*, 504 So.2d 833, 838 (La.1987); *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969); *Leon Lowe & Sons, Inc. v. Great American Surplus Lines Ins. Co.*, 572 So.2d 206 (La.App. 1st Cir.1990); *Benoit v. Fuselier*, 195 So.2d 679 (La.App. 3d Cir.1967). Accordingly, the insurer's obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims. *Czarniecki*, supra 230 So.2d at 259. Thus, if, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Id. An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. *Meloy*, supra.

*Steptore v. Masco Constr. Co.*, 93-2064, pp. 8-9 (La. 8/18/94), 643 So.2d 1213, 1218.

The insurers assert that their policy clearly excludes coverage of the claims made by Cunard. They point to the following policy provisions:

2. Exclusions

    This policy does not apply to:

. . . .

    j. (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

. . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

    k. Damage to Your Product

        "Property damage" to "Your product" arising out of it or any part of it.

    l. Damage to Your Work

2

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work of the work out of which the damage arises was performed on your behalf by a sub-contractor.

m. Loss of Use of Property Not Physically Injured

Loss of use of tangible property which has not been physically injured or destroyed, resulting from:

(1)     A delay in or lack of performance by you or on your behalf of any contract or agreement;

(2)     The failure of "your product" or "your work" to meet the level of performance, quality, fitness or durability warranted or represented by you or on your behalf.

This exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of:

(1) "Your product," or

(2) "Your work;"

after such product or work has been put to its intended use.

The trial court, in oral reasons for judgment given in connection with its October 1, 2003 ruling that the insurers had a duty to defend Datrex, correctly summarized the provisions of the insurance policy and the allegations of Cunard's petition:

Louisiana Courts have recognized that general liability insurance policies containing work product exclusion clauses do not insure any obligation of the policy holder to repair or replace his own defective work or product. In other words, liability policies are not performance bonds. In this case, we're dealing with the Commercial Liability Policy, Section One which entitled Coverages states that we will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of property damage to which this policy applies. We'll have the right needed to defend any claim or suit seeking

3

those damages. I carefully looked at Section Two which contains the exclusions. The Court carefully read Exclusion J, damage to properties specifically Five and Six; Section K which is damage to your product; Section L which is damage to your work; Section M specifically Two and where the exclusion does not apply; Section N, withdrawal or recall of the product, work or property. I also looked at definitions of occurrence, product completed operations hazard, specifically C and sub - Section C - Three under C Twenty-three which is property damage and Twenty-eight which defines your work. It's undisputed that the insurance provided commercial liability coverage to Datrex during the period in which Cunard is claiming injury. The insurance policies cover property damage. The Court must first decide if there was property damage to Cunard. Property damage is defined in the policy as physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it or loss of use of tangible property that it is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it. Based upon the definition and the allegations in the petition, the Court finds that if Cunard meets its evidentiary burden there would be property damage. The next inquiry by the Court is whether or not any of the exclusions apply to the property damage allowed - alleged to have been suffered by Cunard. The Court agrees with Datrex in that exclusion J Five does not apply. The Court agrees that real property referred to in the exclusion is land and its improvements[,] and Cunard is not claiming to claim any damage for land or buildings as a result of the work or product of Datrex or it's subcontractors. Likewise, J Six doesn't apply because it specifically excepts liability from products completed operations hazard. Cunard does allege ongoing damages[,] and even without that exclusion Cunard is alleging other consequential and incidental damages caused not only by defective work by also by defective product. And even though you have interrogatories there they still have not been answered to specify what those might be. Exclusion M Two, which I think is the meat of the matter[,] as argued orally today doesn't apply to the consequential or incidental damages claimed by Cunard, some of which they say are ongoing. The product was installed and in use according to Cunard's petition when Cunard began experiencing problems in the system. Accordingly the product or work had been put to it's intended use. Had it not they couldn't have said, oh we've got problems with it. After put to its intended use the failure of the product must also be sudden and accidental physical injury to or destruction of your product or your work to avoid the M Two exclusion. In Webster's II New College Dictionary the general meaning of the word accident is an unexpected and undesirable event or something that occurs unexpectedly or unintentionally. The Court accepts this definition as the prevailing meaning of the word. So based upon the petition, the Court believes that the problems on the ships were unexpected and undesirable and did cause a loss of use of the ships after the product was put to its intended

use. The word accident is also found in the definition of occurrence. The Court finds that the property damage caused by the defective work and/or defective products is an occurrence or accident which triggers coverage under the terms of the insurance policies. Additionally, Cunard alleges consequential and incidental damages. If these damages include physical injury to the ships and the repair and/or replacement of the LLL systems then the exclusion found in paragraph M Two would not be applicable to them. The policies also contain the works products exclusion, that's in K and L. The policy does not cover defective work or defective products. However, the policy does include separate coverage for products, completed operations hazard with aggregate limits of two million dollars. Aside from this definition in Section 5 of the policy, there's little reference to the coverage in the exclusion section except under paragraphs J Six and L, damage to work. The exclusion contained in paragraph L excludes property damage to (inaudible) work if it arises out of your work and is included in the products completed operations hazard section. However, the clause goes on to say that the exclusion does not apply to damage work or the work out of which the damage arises performed on your behalf by a subcontractor. Based on the affidavits in this case all the work as well as the manufacture of the products that was performed by subcontractors for Datrex. Furthermore, if there was damage to the ship itself resulting from the repair of the defective product or work even though the damage to the product might be excluded under the work product exclusion the damage to the ship would not since it is not part of the product. Other than it's definition and paragraphs J six and L, there's no unambiguous provision addressing what the products operation completed operations coverage as found in the declarations page encompasses. So the Court finds that Datrex has met its burden in showing that taken as a whole the policy does not unambiguously exclude coverage in light of the allegations contained in the pleadings. So the undisputed facts there exists reasonable interpretations of the policy under which coverage for Cunard's claims may be found so the Motion for Partial Summary Judgment by Twin City and Hartford is denied. Now turning to the Motion to defend it's suit brought against the insured the duty to defend is determined by the allegations contained in plaintiff's petition. The insurer is obligated to provide a defense unless the petition is unambiguously excluded - excludes coverage. The insurer contractually agreed to provide a legal defense for liability claims against the insured within the scope of the policy. In the case at hand the Court finds coverage. Consequently, insurers have a duty to provide a defense.

After reviewing the petition and the policy, we agree that the policy does not unambiguously exclude coverage for the damages alleged in the petition.

5

Accordingly, we find no error in the trial court's conclusion that the insurers owed Datrex a defense.

The insurers further assert that after the original demand by Cunard against Datrex was dismissed, its motion for summary judgment heard the same day, December 1, 2004, should have been granted, retroactively relieving them of the duty to defend. The insurers' duty to defend had already been established in October 2003. Additionally:

> "The only evidence that can be considered in a duty to defend claim is the petition and the policy." *Richard v. Metro Bingo of Lafayette, Inc.*, 05-293, p. 8 (La.App. 3 Cir. 3/29/06), 926 So.2d 83, 88 (citing *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969)).

*Tabor v. Anco Insulations, Inc.*, 08-694, p. 5 (La.App. 3 Cir. 12/10/08), 999 So.2d 258, 262, *writs denied*, 09-82 and 09-145 (La. 4/3/09), 6 So.3d 769, 770. The insurers seek a result which would relieve them of the duty to defend depending on the outcome of the case. However, it is well settled that: "the insurer must defend the insured regardless of the outcome of the suit." *Id.* at 262-63. Accordingly, the insurers' motion for summary judgment heard December 1, 2004, was properly denied.

*Amount of Defense Costs*

The insurer's dispute the amount of the award of defense costs, asserting that the bills were unreasonable, duplicative, and that much of the expense could have been avoided by an earlier assertion of the exception of prescription which ultimately resulted in dismissal of Cunard's claim against Datrex. The insurers further argue that the trial court erred in denying them discovery of matters which could have shown that the fees were unreasonable/unwarranted.

6

The insurers sought to discover matters concerning specific items on the bill, apparently in an attempt to show that the charges were unreasonable and that Datrex's attorneys had the knowledge to terminate the matter on the grounds of prescription at a much earlier date than was done. Datrex moved for a protective order arguing that the material sought was work product and/or subject to the attorney-client privilege. The trial court granted the motion for a protective order. The insurers argued that, since the matter was terminated when the hearing was held, February 6, 2008, the work-product privilege was no longer a bar to discovery. However, they have not pursued this argument on appeal.

Further, they fail to cite any jurisprudence or statutory law which would allow them to discover another party's work product, and we have found no such authority. Accordingly, we find no merit in this assignment of error.

As to the amount of the costs of defense, this court has found:

> An appellate court cannot overturn or reverse a trial court's setting of attorney fees unless the appellate court finds that the trial court abused the discretion afforded by the RPC, the Louisiana Constitution, and Louisiana jurisprudence. See RPC 1.5; *Leenerts Farms, Inc.*, 421 So.2d 216, and *Chittenden*, 788 So.2d 1140. "The amount of reasonable attorney fees to be allowed is at the discretion of the trial court. *Teche Bank and Trust Co. v. Willis*, 93-732 (La.App. 3 Cir. 2/2/94); 631 So.2d 644." *Albert K. Newlin, Inc. v. Morris*, 00-1564, pp. 6-7 (La.App. 3 Cir. 2/28/01), 782 So.2d 1116, 1120, *writ denied*, 01-875 (La.5/25/01), 793 So.2d 164.

*Gold, Weems, Bruser, Sues & Rundell v. Granger*, 06-859, pp. 6-7 (La.App. 3 Cir. 12/29/06), 947 So.2d 835, 841, *writ denied*, 07-421 (La. 4/27/07), 955 So.2d 687.

With regard to the attorney's fees, the trial court, after finding that the insurers had a duty defend, stated:

> Since the insurers denied Datrex that defense a conflict was created and it was necessary for Datrex to employ it's own independent counsel. The insurers are liable for attorney fees incurred by Datrex in the defense of

7

the suit. However, Datrex is not given carte blanche. The insurers are only liable for reasonable costs of defense. If there is a conflict as to what those costs - which costs are reasonable, the Court will make it's determination on an issue by issue basis after contradictory hearing. Billings to the insurers should be itemized as far as possible. So Datrex['s] Motion for Summary Judgment is granted and Datrex is entitled to control its own defense through counsel of its choice and receive reimbursement from Twin City and Hartford for the reasonable costs of defending the lawsuit including reasonable attorney fees.

The insurers attempted to have a cap set on the hourly fee charged by the attorneys defending Datrex. The trial court refused to do so but stated that it would be willing to hold contradictory hearings to review the bills submitted to consider whether particular items charged on the bill were excessive. However, the insurers did not ask for a hearing on the amount of the bills as they were submitted but continued to ask, via motion for summary judgment, for a cap on the hourly rate.

After reviewing the record herein in its entirety, we find no abuse of discretion in the trial court's determination that the amounts charged for defense of the claim against Datrex were reasonable or in the amount of the defense costs for which the insurers were cast in judgment.

*Interest on Defense Costs*

The insurers further assert that the trial court erred in awarding interest from date of demand on the award of defense costs. The insurers argue that these are attorney's fees and, as such, interest must run from date of judgment. However, the award of defense costs is in the nature of damages. *Lestelle v. Asbestos Claims Mgmt. Corp.*, 07-1010 (La.App. 4 Cir. 10/22/08), 998 So.2d 149, *writ denied*, 08-2775 (La. 1/30/09), 999 So.2d 764; *Wainwright v. Moreno's, Inc.*, 602 So.2d 734, (La.App. 3 Cir. 1992). As a result, the trial court correctly awarded interest from date of demand.

*Penalties and Attorney's Fees*

Finally, the insurers assert that the trial court erred in finding that they arbitrarily and capriciously failed to pay the costs of Datrex's defense and in awarding penalties and attorney's fees on that basis.

The trial court made the following findings with regard to the insurers' failure to pay defense costs after being ordered to do so:

> On March 6, 2003, Datrex amended its third party demand to pray for penalties and attorney's fees and costs associated with arbitrarily and capriciously refusing to provide a defense against the Cunard suit. The insurers' answer to the amended claim included this statement, "Respondents do not admit that Datrex is legally entitled to a defense under the circumstances of this case." They did state in that answer that they had timely offered to underwrite Datrex's defense by counsel of its own choosing subject to limitations of hourly rate and firm representations. That was in their answer. On May 2, 2002, as the correspondence verifies, and Mr. Allgood pointed out, from the insurers to Datrex's attorneys, the insurers denied coverage, defense and indemnification under their policies. On June 26, 2003, the insurers filed a motion for partial summary judgment wanting to be dismissed with prejudice on the basis of no coverage. After filing their motion, Mr. Moore, in correspondence to Mr. Allgood, indicated that he had recommended to the insurers that they provide an "unconditional defense pending a determination by the Court of its obligations." However, the Court does not find that they did so. On September 9, 2003, Datrex filed a motion for partial summary judgment on the duty to defend. The Court on October 1, denied the insurers' motion but granted Datrex's motion stating not only did the insurers have a duty to defend but that Datrex was in control of its defense and could hire independent counsel because of the inherent conflict of denial of coverage under the insurance policy yet still having that duty to defend. At this point, all of the fact finding and law concerning duty to defend and penalties for failure to do so should have been collected and researched by Datrex. An invoice of billing was sent to insurers on November 21, 2003[,] by Datrex, with a demand for unconditional payment within thirty day under 22:658 of the amounts not in dispute. No payment of any kind was made. A second amendment to the third party demand was filed on August 30, 2007[,] again alleging that insurers were arbitrary and capricious in failing to pay defense costs. A second formal request for payment of attorney fees with updated invoices was sent by Datrex to insurers on September 8, 2006. Finally on October 18, 2006, three years following the Court's October 1, 2003 ruling, the insurers sent a check to Datrex in the amount of $79,019.36.

During this three year period the insurers continued to file motions concerning coverage and hourly fee caps for defense counsel, all of which were denied. Even after the Court stated that it would not set an hourly cap on fees, the insurers still questioned reasonableness of the work performed and duplication of fees by the two firms representing Datrex. The Court issued a protective order to Datrex of its work product which may have in someway hamstrung insurers to some extent in their determination of what portions of the invoice they believed were not reasonable. However, even with that the Court finds that the tender of $79,019.36 was both conditional and unreasonable under the circumstances. And, in fact, on August 27, 2008, the Court awarded attorney fees to Datrex for the defense costs against Cunard's claims in the amount of $219,580.74. The Court finds that the acts of the insurers were arbitrary and capricious in that they failed to remit payment of attorney fees without probable cause and therefore fall under the provisions of 22:658. The Court has taken into consideration that this statute as well as 22:1220, is punitive in nature and is to be strictly construed. 22:658 has been found applicable by the courts for failures of insurers to defend their insured and the Court finds it applicable here. The insurers initially refused to provide a defense for Datrex and so stated in their May 2, 2002 letter to Datrex. In July, 2002, insurers changed their mind and offered a conditional agreement to provide a defense with a reservation to contest coverage, which they had a right to do. In September, 2002, Datrex was advised by insurers that they could hire their own counsel but the insurers would only pay $160.00 per hour for said counsel. In March, 2003, insurers suggested paying an agreeable amount of attorney fees to Datrex as long as Datrex agreed to forego any past or future claim for penalties or attorney fees resulting from bad faith. Even after the Court ruled on duty to defend in October, 2003, no unconditional tenders of payment were made by insurers to Datrex ever. A conditional payment was made three years after the ruling; yet it was only a small portion of the amount in the invoices and, as the Court stated earlier, an unreasonable amount. The protracted litigation concerning attorney fees for the defense of the main claim by Cunard against Datrex has gone on way too long in the Court's opinion as a result of litigation and re-litigation of the same issues filed by the insurers with no movement towards payment of the attorney fees by insurers for over three years from the Court's ruling on duty to defend, and over four years from the filing of the lawsuit by Cunard and notice by Datrex to the insurers.

The insurers do not dispute the trial court's recitation of their actions, they argue merely that those actions were reasonable under the circumstances. Further, they argue that the court never found that they breached their duty to defend.

10

However, it is clear from the above cited reasons that the trial court did find that they had breached their duty to defend and were arbitrary and capricious in so doing.

Whether an action or failure to act is arbitrary and capricious is a question of fact subject to the manifest error standard of review. *See Broussard v. Total Tower Services, Inc.*, 08-815 (La.App. 3 Cir. 12/10/08), 999 So.2d 324; *Parrish v. Van-Tel Communications*, 07-454 (La.App. 3 Cir. 10/10/07), 967 So.2d 592. After reviewing the record herein, we cannot say the trial court erred manifestly in finding the insurers acted arbitrarily and capriciously in failing to pay Datrex's costs of defending Cunard's claims.

*Additional Attorney's Fees on Appeal*

It is well established that:

> "An increase in attorney's fees for services rendered on appeal is *usually* awarded when the defendant appeals and obtains no relief on appeal, and when the plaintiff requests it in accordance with proper appellate procedure." *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133, 138 (La.App. 3 Cir.1979). (Emphasis added.) "Because attorney fees were correctly awarded below, to not award increased attorney fees for the additional work required for this appeal would be inconsistent with that judgment." *Acadian Serv., Inc. v. Durand*, 01-1554, p. 4 (La.App. 3 Cir. 4/3/02), 813 So.2d 1142, 1144.

*Vander v. Safeway Ins. Co. of LA.*, 08-888, p. 11 (La. App. 3 Cir. 2/25/09), 5 So.3d 968, 975.

Accordingly, we will award additional attorney's fees on appeal in the amount of $10,000.00.

**CONCLUSION**

For these reasons, the judgment of the trial court is affirmed. The Third-Party Defendants-Appellants are ordered to pay Datrex the amount of $10,000.00 in additional attorney's fees on appeal. Additionally, Third-party Defendants-

11

Appellants, Twin City Fire Insurance Company and The Hartford,  are assessed with the costs of this appeal.

AFFIRMED.