# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 08-694

ELVIST J. TABOR, SR., AND
DORIS G. TABOR

VERSUS

ANCO INSULATIONS, INC., ET AL.

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 66,929-H
HONORABLE LORI A. LANDRY, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, Judges.

Peters, J., concurs in part, dissents in part, and assigns written reasons.

**AFFIRMED IN PART, REVERSED IN PART,
AND RENDERED**.

**Stephen R. Wilson**
**Keogh, Cox & Wilson, Ltd.**
**701 Main Street**
**Post Office Box 1151**
**Baton Rouge, LA 70821**
**(225) 383-3796**
**COUNSEL FOR THIRD PARTY DEFENDANT/APPELLANT:**
    The Hartford Steam Boiler Inspection and
    Insurance Company

**Scott G. Johnson**
**Keala C. Ede**
**Robins, Kaplan, Miller & Ciresi L.L.P.**
**800 LaSalle Avenue, Suite #2800**
**Minneapolis, MN 55402**
**(612) 349-8500**
**COUNSEL FOR THIRD PARTY DEFENDANT/APPELLANT:**
    The Hartford Steam Boiler Inspection and
    Insurance Company

**James K. Irvin**
**Magdalen B. Bickford**
**Philippe J. Langlois**
**909 Poydras Street, Suite 2300**
**New Orleans, LA 70112**
**(504) 569-7000**
**COUNSEL FOR THIRD PARTY PLAINTIFF/APPELLEE:**
       **Levert – St. John, Inc.**

**William Davis**
**339 Florida Street, Suite 300**
**Baton Rouge, LA 70801**
**(225) 291-7300**
**COUNSEL FOR THIRD PARTY PLAINTIFF/APPELLEE:**
       **Levert – St. John, Inc.**

**GENOVESE, Judge.**

In this asbestos-injury case, third-party defendant/insurer, Hartford Steam Boiler Inspection and Insurance Company (HSB), appeals the trial court's grant of summary judgment in favor of third-party plaintiff/insured, Levert – St. John, Inc. (Levert) relative to the issues of: (1) HSB's duty to defend; (2) HSB's duty to indemnify; (3) the award of penalties in favor of Levert; and, (4) Levert's entitlement to damages. For the following reasons, we affirm in part, reverse in part, and render.

## FACTS

On September 5, 2003, Elvist J. Tabor, Sr., and his spouse, Doris G. Tabor, instituted a personal injury action for damages against numerous defendants, alleging that Mr. Tabor had contracted mesothelioma[1] while working for Levert. On November 5, 2003, Mr. Tabor passed away. On January 13, 2004, A First Supplemental and Amending Petition was filed by Mrs. Tabor and their five children (the Tabors), asserting a survival action and seeking damages for wrongful death. Levert was added as a defendant by means of a supplemental and amending petition filed October 28, 2004. The Tabors alleged that from 1959 to 1974, Mr. Tabor was employed as a mechanic, welder, and sugar boiler at Levert's sugar mill in St. Martinville, Louisiana, and was exposed to asbestos and asbestos containing materials. The claims asserted by Mr. Tabor and subsequently by his survivors against Levert were settled on October 11, 2005, for $87,500.00.

The matter presently before this court involves only the third-party demand asserted by Levert against HSB pursuant to a boiler and machinery insurance policy

---

[1]As defined by DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, pg. 1159 (31 st ed.2007) "mesothelioma" is "a tumor derived from mesothelial tissue." Additionally, "[m]alignant varieties are often the result of excessive exposure to asbestos." *Id.*

issued by HSB in effect from October 1, 1963 to October 1, 1966. After being served

with the main demand, Levert determined that there was potential coverage under its

HSB policy for the personal injury claims being asserted against it by the Tabors. On

May 3, 2005, Levert made demand upon HSB to provide a defense and

indemnification relative to the Tabors' claims. As a result of HSB's refusal to defend

and indemnify Levert, on July 8, 2005, Levert filed a third-party claim against HSB,

asserting that HSB owed it both a defense and indemnification, alleging that the

asbestos-related claims of the Tabors in the main demand were covered by the boiler

and machinery insurance policies. Levert also alleged that HSB's denial of coverage

to Levert was in bad faith, thereby entitling it to penalties under La.R.S. 22:658.[2]

Levert also sought reimbursement for the settlement amount, costs, attorney fees, and

expenses it incurred in defending the main demand, as well as reimbursement for

expenses it incurred in pursuing third-party claims.

On December 9, 2005, HSB filed a motion for summary judgment, asserting

therein that Levert was unable to show that the injuries sustained by Mr. Tabor were

---

[2]Although subsequently amended, the version of La.R.S. 22:658 relevant to the case at bar provided in pertinent part:

> B. (1)Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.

the result of an "Accident" to an "Object" as required under the HSB policy. Additionally, HSB contended that no coverage existed under the HSB policies given Levert's failure to provide timely notice to HSB. On December 14, 2006, Levert filed a cross motion for summary judgment on the issue of liability. The trial court ruled in favor of Levert and against HSB on both motions.

HSB filed a motion for reconsideration and/or motion for new trial on September 17, 2007, contending that no coverage existed under the policies due to the inclusion of "Other Insurance" clauses in the HSB policies and the inclusion of "Other Insurance" pro rata clauses in the insurance contracts issued to Levert by its primary liability insurer. This motion was denied by the trial court on September 21, 2007.

After Levert and HSB were unable to agree on the amount of damages, Levert filed a motion for entry of final judgment on December 18, 2007. The trial court entered a final judgment in favor of Levert in the amount of $375,074.37, representing $87,500.00 paid to the Tabors in settlement by Levert, $212,559.50 in attorney fees and costs incurred by Levert in defending the Tabors claims and in Levert's prosecution of third-party claims and cross-claims against various other parties, and $75,014.87 in penalties under La.R.S. 22:658, plus court costs. HSB appeals.

## ASSIGNMENTS OF ERROR

HSB raises the following assignments of error:

1.

The 16th Judicial District Court erred in ruling that HSB had a duty to defend Levert because the Tabor [p]laintiffs' allegations against Levert did not trigger coverage.

2.

The 16th Judicial District Court erred in ruling that HSB had a duty to indemnify Levert because (a) Levert had no evidence to prove that the required "Accident" to an "Object" caused Mr. Tabor's injuries during the term of the HSB policies, (b) Levert's late notice to HSB and failure to provide HSB with an opportunity to examine any damaged property before it was repaired are breaches of its obligations under the contract, and (c) HSB's "Other Insurance" escape clause and the "Other Insurance" pro rata clause in Levert's primary liability policies bar coverage to Levert.

3.

The 16th Judicial District Court erred in levying [La.R.S.] 22:658 penalties against HSB because HSB's denial of coverage was in good faith and not arbitrary and capricious.

4.

The 16th Judicial Court erred in awarding damages to Levert because Levert is not entitled to recover attorney[] fees and costs incurred in prosecuting its coverage claims against insurers or its third-party claims against other parties.

## LAW AND DISCUSSION

**Standard of Review**

Our Louisiana Supreme Court has stated the following relative to an appellate court's review of a motion for summary judgment:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363[,] p. 3 (La.11/29/06), 950 So.2d 544, 546, see [La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181[,] p. 17 (La.3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337[,] p. 7 (La.10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424[,] p. 5 (La.4/14/04), 870 So.2d 1002, 1006.

*Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote

4

omitted).

**Duty To Defend**

HSB asserts, in brief, that the trial court "erred in concluding that HSB had a duty to defend Levert because there were no allegations by the Tabor Plaintiffs that Mr. Tabor's injuries were due to a covered 'Accident' to a covered 'Object,' as required by the HSB policies in order to trigger coverage." We disagree.

"The only evidence that can be considered in a duty to defend claim is the petition and the policy." *Richard v. Metro Bingo of Lafayette, Inc.*, 05-293, p. 8 (La.App. 3 Cir. 3/29/06), 926 So.2d 83, 88 (citing *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969)). This court recently discussed an insurer's duty to defend, stating as follows:

> [I]n order to determine whether an insurer may have a duty to defend its insured against claims made against it, we look only to the original allegations of fault made against the insured:
>
>> The cornerstone pronouncement of the "duty to defend" rule is found in *American Home Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969), where the Louisiana Supreme Court stated at 259, 230 So.2d 253:
>>
>>> "[T]he insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
>>>
>>> Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's

5

> duty to defend the suit brought against its insured."
>
> On the other hand, if it is clear that the allegations of plaintiff's petition refer only to acts or omissions that are excluded from coverage under the terms of the policy, then the insurer owes no duty to defend. *Bourque v. Lehmann Lathe, Inc.*, 476 So.2d 1129 (La.App. 3rd Cir.1985), *writ denied*, 479 So.2d 362 (La.1985).
>
> *Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc.*, 611 So.2d 158, 160 (La.App. 3 Cir.1992).

*Mobile Imaging, Inc. v. Fix*, 07-1482, pp. 3-4 (La.App. 3 Cir. 4/2/08), 980 So.2d 240, 242-43, *writ denied*, 08-941 (La. 6/20/08), 983 So.2d 1284 (second alteration in original).

Hence, we must examine the allegations asserted against Levert by the Tabor plaintiffs. It is HSB's contention that the Tabors did not allege an "Accident" to an "Object" as the cause of Mr. Tabor's injuries so as to trigger the relevant provisions of the boiler and machinery policy relative to bodily injury.

The second supplemental and amending petition of the Tabors, which added Levert as a defendant in the main demand, states as follows:

> (aa) At all times relevant hereto, Defendant, **Levert-St. John Sugar Mill**, was a premises owner and operator where asbestos, asbestos containing products, apparatus incorporating asbestos containing products and asbestos insulation products were used in the construction, operation, repair and maintenance of its sugar mill where Elvist Tabor, Sr. was exposed to such asbestos fibers and asbestos containing products.

It was the Tabors' assertions that Mr. Tabor was exposed to these asbestos containing materials during the course of his employment and that this exposure caused him to develop mesothelioma, an asbestos-related disease. The Tabors further assert that Mr. Tabor's job duties included, but were not limited to, performing mechanical work and repairs and performing welding work.

6

HSB maintains that these allegations are insufficient to trigger the provisions of its policies which involve a "specialized type of property insurance" which provides coverage for bodily injury only if certain contingencies are met, namely, bodily injuries which result from "Accidents" to "Objects." The relevant policy provisions relied upon by HSB include the following:[3]

**Insuring Agreement**

In consideration of the Premium, the Company agrees with the Assured named in the Declarations made a part hereof respecting loss from an Accident, as defined herein, occurring during the Policy Period, to an Object, as defined herein, while the Object is in use or connected ready for use at the Location specified for it in the Schedule, subject to the Declarations, to the Conditions, to other terms of this policy and to the Schedules and Endorsements issued to form a part thereof, as follows:

. . . .

| | |
|---|---|
| SECTION IV Bodily Injury Liability | To PAY, to the extent of any indemnity remaining after payment of all loss as may be required under Sections I, II and III, such amounts as the Assured shall become obligated to pay by reason of the liability of the Assured, including liability for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by such Accident, except that the indemnity hereunder shall not apply to any obligation for which the Assured or any company as insurer of the Assured may be liable under any workmen's compensation, un-employment compensation or disability benefits law, or under any similar law; to PAY, irrespective of the Limit per Accident, for such immediate medical and surgical relief to others as shall be rendered at the time of the Accident; |

---

[3] The sections of the HSB policy omitted, but referred to below within the policy, include: "SECTION I Loss on Property of Assured[,]" "SECTION II Expediting Expenses[,]" and "SECTION III Property Damage Liability."

| SECTION V | To DEFEND the Assured against claim or suit |
| Defense | alleging liability under Section III, and under Section |
| Settlement | IV if insurance under Section IV is included, unless |
| Supplementary | or until the Company shall elect to effect settlement |
| Payments | thereof; and to PAY all costs taxed against the |
|  | Assured in any legal proceeding defended by the |
|  | Company in accordance with such Sections, all |
|  | interest accruing after entry of judgment rendered in |
|  | connection therewith up to the date of payment by the |
|  | Company of its share of such judgment, all premiums |
|  | on appeal bonds required in such legal proceedings, |
|  | all premiums on bonds to release attachments for an |
|  | amount not in excess of the applicable limits of |
|  | liability for Sections III and IV, and all expenses |
|  | incurred by the Company for such defense; the |
|  | amounts incurred under Section V are payable by the |
|  | Company irrespective of the Limit per Accident, |
|  | except settlements of claims and suits. |

The HSB policy lists various "Objects" including, for example, turbines, engines, generators, boilers, and compressors. The definition of "Accident" is worded slightly different within the HSB policy to befit the particular "Object" addressed in differing policy provisions. However, Endorsement A(1) provides the following **"DEFINITION OF ACCIDENT[:]"**

> "Accident" shall mean (I) A sudden and accidental breakdown of the Object, or a part thereof, which manifests itself at the time of its occurrence by physical damage to the Object that necessitates repair or replacement of the Object or part thereof; but Accident shall not mean (a) depletion, deterioration, corrosion, or erosion of material; (b) wear and tear. . . .

Although it is apparent that the Tabors assertions do not paraphrase the HSB policy provisions/definitions, they need not do so. What is clearly asserted therein is that Mr. Tabor, while performing work as a repairman, among other job duties, conducted maintenance and repairs to certain Levert property, i.e. "Objects." Additionally, this work was necessitated by an "Accident" or "breakdown" of the property that required "repair" of same. The Tabor allegations are clear that Mr.

8

Tabor performed repair work on these "Objects[,]" and, during the course thereof, he was exposed to asbestos-containing materials which caused him to develop mesothelioma. We find that the facts, as plead by the Tabors, do not unambiguously exclude coverage. Consequently, we find no error in the trial court's conclusion that HSB had a duty arising under its boiler and machinery insurance policies to defend Levert in the main demand asserted against Levert by the Tabors.

**Duty To Indemnify**

HSB contends that Levert failed to prove "that an 'Accident' to an Object' occurred during the policy term as a precondition of proving coverage" and, consequently, a duty of HSB to indemnify Levert. We disagree.

> As a general rule, the one seeking indemnity must establish actual liability to recover. *Terra Resources v. Lake Charles Dredging & Towing*, 695 F.2d 828, 831 (5th Cir.1983). An exception to the rule is that the indemnitee need show only potential, rather than actual, liability on his part where the claim is based on a written contract, such as an insurance policy. *Rovira v. LaGoDa, Inc.*, 551 So.2d 790, 795 (La.App. 5th Cir.1989), *writ denied*, 556 So.2d 36 (La.1990).

*Vaughn v. Franklin*, 00-291, p. 10 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 87, *writ denied*, 01-1551 (La. 10/5/01), 798 So.2d 969.

*Proof of "Accident" to "Object"*

HSB devotes much discussion to the inability of Levert to pinpoint the actual occurrence of an accident by specific time and date. However, we do not find that this inability negates the duty of HSB to indemnify Levert. To the contrary, we agree with Levert's assertion, in brief, that "[t]he undisputed evidence . . . disclosed that such accidents and breakdowns were common occurrences during the entire time of [HSB's] coverage."

The record contains the testimony of Mr. Roland Hebert, Levert's General

9

Manager, who testified that he recalled breakdowns occurring at the mill. He testified that it was "normal" for a boiler to have a problem and for work to have continued at the plant. Mr. Hebert explained that there were some instances in which an outside company was called in to make the repairs. On other occasions, the repairs were done by Levert employees.

The affidavit of Mr. Glenn Judice is consistent with Mr. Hebert's testimony. Mr. Judice is an employee at the Levert sugar mill. According to Mr. Judice, "on occasions, the boilers, turbines and clarifiers broke down and required repair." He explained that when the repairs were "small," they were done with Levert's own "repair crew." When repairs were made "[a]ll workers in the area, including Ernest Tabor, [were] exposed to the dust generated by repairs to the machinery due to . . . sudden and unexpected breakdowns." The affidavit of Mr. Judice also contains several statements relative to various equipment that was "repaired, due to sudden and unexpected breakdowns." Mr. Judice testified that he worked with Mr. Tabor and that "more probabl[ly] than not . . . [Mr. Tabor] performed repairs" to the equipment and was in the area when repairs were performed by other workers. Finally, according to Mr. Judice, various equipment had asbestos-containing material which was released into the air during the repair process.

The evidence shows that accidents to the property at Levert occurred with regularity. Levert's employees, including Mr. Tabor, were sometimes involved in making the actual repairs or, on occasion, were in the vicinity where the repairs were being made. Although the specific date and time of each accident is not identified, clearly these incidents of exposure were a common occurrence during the relevant time period. We find that based upon our examination of the applicable policy

language and the facts as presented in the record, accidents to objects occurred with regularity which necessitated repairs to the equipment, thereby exposing Mr. Tabor to asbestos.

*Notice*

HSB also asserts in brief that it owed no duty to indemnify Levert due to (1) Levert's failure to provide notice of damage to the property, and (2) Levert's duty to provide HSB with an opportunity to examine the property in question. HSB contends that it did not get notice until 2005, "some thirty or forty years" after the occurrence. We find no merit in this contention.

First, as discussed above, some of the repairs to Levert's equipment were minimal in nature and were done in-house by its own employees. The cost of these repairs would not have met Levert's deductible under the HSB policy. Accordingly, Levert did not inform HSB of each and every repair since these claims would not have been submitted under the boiler and machinery policy.

More importantly, we find it implausible for HSB to now assert a lack of notice of the occurrence of accidents to objects of Levert. HSB expressly acknowledged the occurrence of numerous accidents in 1966. The record contains correspondence dated August 29, 1966, from HSB to Levert, which states that due to the number of claims being presented, HSB was increasing its damage deductible limit to $1,000.00. HSB also states in the letter that it was of the belief that "the experience can be improved by excluding the smaller losses and the expense to ourselves (and to the policyholders) of handling them." HSB's correspondence then contains the following paragraph:

> The loss experience for your mill has been good for the past two or three policy terms. However, it may interest you to know that our records

11

show an overall experience for your mill whereby we have paid in losses 170% of the premium earned. As long as the overall sugar mills experience was livable for us, we were not too concerned about experience at a particular mill. Now, even though your experience has improved, the general experience has declined to where we feel this action is necessary.

This correspondence establishes that HSB was well aware of the occurrence of several accidents. This is corroborated by HSB's decision to increase its damage deductible limit under the policy. HSB cannot now claim that it lacked notice of the accidents. To the contrary, it was due to the number of accidents that the deductible was increased. Additionally, a corollary to an increase in the deductible amount is a decrease in the number of claims made under the policy. HSB, therefore, had notice of the occurrence of the accidents during the policy periods and cannot now assert a lack thereof in an effort to avoid coverage under the policy.

We note that both HSB and Levert discussed the question of prejudice, *vel non*, suffered by HSB due to the alleged failure of Levert to provide notice. However, given our finding herein that HSB had actual notice, we pretermit any discussion of prejudice.

### *"Other Insurance" Provisions*

Finally, on the issue of indemnification, HSB contends that it owed no duty to indemnify Levert given the inclusion of an "Other Insurance" clause in the HSB policy and an "Other Insurance" clause in Levert's primary liability policies. However, this issue is not properly before this court as it was first raised by HSB in the trial court via a motion for reconsideration and/or motion for new trial, and the primary liability policies upon which HSB relies were not introduced into evidence in connection with the motion for summary judgment.

12

**Penalties Pursuant to La.R.S. 22:658**

HSB contends that the trial court erred in awarding Levert penalties under La.R.S. 22:658 since its denial of coverage was in good faith and was not arbitrary and capricious. We disagree.

Pursuant to La.R.S. 22:658, penalties may be assessed against an insurer who arbitrarily, capriciously, or without probable cause, fails to provide a defense to its insured. *Vaughn*, 785 So.2d 79. For the reasons discussed above relative to HSB's duty to defend Levert in the main demand, we find no error in the trial court's conclusion that HSB's refusal to defend Levert was arbitrary and capricious and that penalties were justly awarded to Levert.

**Award of Damages**

HSB contests the trial court's award of damages asserting that "**Levert is not entitled to recover attorney[] fees and costs incurred in prosecuting its coverage claims against its insurers or its third-party and cross-claims against other parties.**" HSB distinguishes the fees incurred by Levert in *defending* against the claims asserted by the Tabors in the main demand from the fees incurred by Levert in *prosecuting* claims against other insurers or third-party claims and cross-claims against other parties. We agree with HSB that Levert is not entitled to recover fees and costs incurred in its *prosecution* of claims against others.

As quoted earlier in this opinion, the HSB policies provide, in Section V thereof, that HSB is:

> To DEFEND the Assured against claim or suit alleging liability under Section III, and under Section IV if insurance under Section IV is included, unless or until the Company shall elect to effect settlement thereof; and to PAY all costs taxed against the Assured in any legal proceeding defended by the Company in accordance with such Sections, all interest accruing after entry of judgment rendered in connection

13

therewith up to the date of payment by the Company of its share of such judgment, all premiums on appeal bonds required in such legal proceedings, all premiums on bonds to release attachments for an amount not in excess of the applicable limits of liability for Sections III and IV, and all expenses incurred by the Company for such defense; the amounts incurred under Section V are payable by the Company irrespective of the Limit per Accident, except settlements of claims and suits.

Thus, pursuant to the contract of insurance between these parties, HSB's obligation encompasses only the costs of defense of Levert in claims asserted against it as the insured. The policy provisions thereby restrict Levert's recovery to reimbursement for the attorney fees and costs which it incurred in defending the claims asserted against it by the Tabors in the main demand. Additionally, considering the indemnification claim presented herein, we are aware of no statutory or jurisprudential authority entitling Levert to recover fees and costs associated in its prosecution of cross-claims and third-party claims. Therefore, we reverse that portion of the trial court's judgment representing said fees and costs and only award Levert its attorney fees and costs incurred in defending against the Tabors' claims. That figure, according to Court Exhibit 2 in the record, amounts to $93,557.50 ($213,082.00, less $119,002.00 representing fees and costs relative to third-party claims and cross-claims, less $522.50 deleted by the trial court as duplicate entries).

## DECREE

For the foregoing reasons, that portion of the trial court judgment holding that HSB had a duty to defend and to indemnify Levert is affirmed. Additionally, the judgment of the trial court awarding Levert penalties pursuant to La.R.S. 22:658 is likewise affirmed, as amended below. However, the judgment of the trial court in favor of Levert representing fees and costs incurred by Levert in its prosecution of cross-claims and third-party claims is hereby reversed. Judgment in favor of Levert

14

– St. John, Inc. and against Hartford Steam Boiler Inspection and Insurance Company, with legal interest from date of judgment, is hereby rendered for the following:

1.  The amount paid by Levert in settlement
    of the Tabor's claims.................................................................$87,500.00

2.  The amount of the indemnification in
    defending only the claims asserted against
    Levert by the Tabors in the main demand.....................................93,557.50

3.  The amount of the penalty pursuant to
    La.R.S. 22:658, i.e. 25% of $181,057.50
    ($87,500.00 plus $93,557.50).......................................................<u>45,264.37</u>
    <u>$226,321.87</u>

Costs of this appeal are assessed equally against Levert – St. John, Inc. and against Hartford Steam Boiler Inspection and Insurance Company.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

NUMBER 08-694


COURT OF APPEAL, THIRD CIRCUIT
STATE OF LOUISIANA

ELVIST J. TABOR SR., ET AL.

VERSUS

ANCO INSULATIONS, INC., ET AL.


PETERS, J., concurring in part and dissenting in part.

I agree with the majority's disposition of all but one of the issues in this matter, the imposition of penalties under La.R.S. 22:658. "The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto. Ins.*, 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1021. In this matter, the policy or policies at issue are ones in effect forty years ago, and HBS set forth a reasonable basis to defend the claim and there is no evidence that it acted in bad faith. I would reverse that portion of the judgment.